# CIRCUIT COURT OF AUGUSTA COUNTY

William Stuart Coffman

v.

Arthrex, Inc.,
and Augusta Health Care, Inc.

March 31, 2005

Case No. CL03-682

BY JUDGE THOMAS H. WOOD

Now pending before me for a decision is a Demurrer filed by the defendant, Augusta Health Care, Inc. (AHC), to an Amended Motion for Judgment filed by the plaintiff, William Stuart Coffman.

The legal principles applicable in ruling on a Demurrer were recently set forth by the Virginia Supreme Court in the case of *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909 (2001). "A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state valid cause of action. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996). We consider as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged. *Id.*"

The facts of this case are that the plaintiff underwent a surgical procedure on March 6, 2002, in Augusta Medical Center (AMC), a hospital owned by AHC, to repair a torn rotator cuff. During this procedure, a biodegradable screw was inserted in the shoulder of the plaintiff. This screw was manufactured and sold to AHC for use by AMC by the defendant

Arthrex. Subsequent to the surgery, the head of the screw broke off and resulted in the plaintiff undergoing additional surgical procedures to remove the screw and to again repair the torn rotator cuff.

The Court has previously sustained a Demurrer to the original Motion for Judgment with leave to amend. The defendant, AHC, has again demurred to the Amended Motion for Judgment.

The standards for reviewing a pleading when a demurrer has been filed by defendant have been set forth repeatedly by the Virginia Supreme Court over the years. A large number of the Supreme Court decisions end up with a trial court being reversed for short circuiting the trial process. It is clear policy of this State that a litigant is entitled to a hearing on the merits of their claim if their claim has any merits.

No good purpose will be served by discussing the allegations in the Amended Motion for Judgment at length. The Amended Motion for Judgment has 45 paragraphs and three counts. Count I is entitled "Negligent Manufacture; Failure to Warn," Count II is entitled "Breach of Warranty of Merchantability," and Count III is entitled "Breach of Warranty for a Particular Purpose." Count I seeks to impose liability on the defendant Arthrex only. Counts II and III are against both defendants. In addition to the foregoing, it is apparent from the language in Paragraphs 7, 11, 12, 13, 14, 17, 20, 21, 23, 38, and 40 of the Amended Motion for Judgment that this is a products liability suit. Nowhere is there an allegation of negligence, and nowhere is there an allegation that any employee of AMC/AHC breached any standard of care. In his Memorandum in Opposition to the Demurrer, the plaintiff asserts that the Demurrer should be overruled because the Court does not have the contract between the plaintiff and the defendants and between the defendants before it. That is certainly true. However, there is no mistaking the theory upon which plaintiff proposes to impose liability upon AHC.

There apparently is no Virginia case directly on point. One Virginia case which possibly could shed some light upon how the Virginia Supreme Court will rule upon this issue is the case of *Commonwealth Department of Taxation v. Bluefield Sanitarium, Inc.*, 216 Va. 686, 222 S.E.2d 526 (1976). In this case, the Virginia Supreme Court did indeed discuss the nature of the business of a hospital, i.e., the rendition of services as opposed to the sale of the various items provided to patients during their care and treatment. However, this is a tax case, there are many different policy considerations, and there is nothing in this case which would bind the Supreme Court when it considers the case at bar.

Defense counsel supplied the Court with a number of cases which are squarely on point. One case which this Court found to be very persuasive is the case of *Royer v. Catholic Medical Center*, 144 N.H. 330, 741 A.2d 74 (1999).

In the *Royer* case, the plaintiff underwent knee replacement surgery, the prosthesis proved to be defective and another implant surgery was required. After the manufacturer of the prosthetic knee took bankruptcy, the plaintiff proceeded against the hospital on a products liability theory. The Superior Court granted a motion to dismiss before trial on the grounds that the hospital was not, as a matter of law, engaged in the business of selling prosthetic devices. On appeal, the New Hampshire Supreme Court affirmed that decision. In the *Royer* case, as in the case at bar, the plaintiff argued that the defendant hospital had charged separately for the prosthetic device and that this constitutes a sale. The *Royer* Court suggested that the issue in the case was not whether the defendant had "sold" a prosthetic device, but whether the defendant hospital was engaged in the business of selling as opposed to the business of providing medical services. *Royer*, 741 A.2d at 77. Other cases which are virtually indistinguishable from the *Royer* case are *Cafazzo v. Central Medical Health Services, Inc.*, 542 Pa. 526, 668 A.2d 521 (1995); *Brandt v. Sara Bush Lincoln Health Center*, 322 Ill. App. 3d 348, 771 N.E.2d 470 (2002). A case with some procedural distinctions which do not impact upon the Court's holding is the case of *St. Mary Medical Center, Inc. v. Casco, Administratrix*, 639 N.E.2d 312 (Ind. App. 1994). There are a number of other cases which deal with this issue, many of which are discussed in the *Royer* case.

Circuit courts are not policy makers. In fact, it is the function of these Courts to follow the policy dictates of the legislatures and appellate courts which do dictate policy. There is nothing in the Uniform Commercial Code as adopted by Virginia and nothing in Chapter 21.1 of Title 8.01 of the Code of Virginia, Medical Malpractice, which states that supplying a patient with a device for a fee is not a sale and that a health care provider could not be liable, under such circumstances, on a products liability theory. However, it appears to be that had the General Assembly intended health care providers to be treated as "merchants," such a provision would have been covered in the Medical Malpractice Act. It clearly is not. Because of that, and in the absence of any Virginia Supreme Court case suggesting that plaintiff can proceed on a products liability theory, the Court is of the opinion that the Demurrer ought to be sustained. The Court is of the opinion that health care providers render a service to their patients, and the transfer of any type of good or device to the patient during treatment is merely incidental to that treatment. The health care provider is not a "seller" and is not subject to liability on a products liability theory.